Matthew R. Mendelsohn
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, NJ 07068
Telephone: (973) 228-9898

Richard Norman, Esq. (*pro hac vice* forthcoming)
R. Martin Weber, Jr., Esq. (*pro hac vice* forthcoming)
**CROWLEY NORMAN, LLP**
3 Riverway, Suite 1775
Houston, Texas 77056
Telephone:  (713) 427-8715

*Attorneys for Plaintiff and Putative Class*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SANDRA SPEIER-ROCHE, individually, and on behalf of a class of similarly situated individuals,<br><br>        Plaintiff,<br><br>  v.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC. d/b/a AUDI OF AMERICA, INC., AUDI AG and VOLKSWAGEN AG,<br><br>        Defendants. | **Civ. Ac. No.:**<br><br><br>**CLASS ACTION COMPLAINT AND JURY TRIAL DEMAND** |

Plaintiff Sandra Speier-Roche individually and on behalf of all others similarly situated alleges as follows:

### INTRODUCTION

1.      The braking system installed in the 2007 to present Audi Q7 vehicles ("Class Vehicles") suffer from a defect that causes, among other things, the Class Vehicles' brake pads to wear out prematurely, and require replacement approximately every 7,500 to 15,000 miles, far more frequently than in a properly functioning braking system ("Brake Defect").

Although defects in material, manufacturing and workmanship are covered by Audi's New Vehicle Limited Warranty[1] ("Warranty"), Audi has failed to repair the Brake Defect under warranty.

2.      Audi knows of the Brake Defect and knows that consumers do not anticipate having to inspect or replace the Class Vehicles' brake pads every 7,500 to 15,000 miles. Nevertheless, Audi has not informed current owners and lessees of Class Vehicles about the Brake Defect, has not disclosed the Brake Defect to purchasers and lessors of Class Vehicles, and continues to promote the braking system on the Class Vehicles.

3.      The Class Vehicles present a safety hazard and are unreasonably dangerous to consumers. The braking system is one of the most important mechanical components for vehicle control and safe driving. A defective braking system can have serious consequences on handling, braking, and the stability of the Class Vehicles while in operation, thereby contributing to car accidents, which can cause personal injury or death.

4.      In addition to these safety hazards, the cost to repair the Brake Defect can be exorbitant because consumers will be required to pay hundreds, if not thousands, of dollars to prematurely replace the brake pads, rotors, calipers and other brake related components as a result of the Brake Defect. Indeed, as a result of the Brake Defect, the brake pads must frequently be replaced prematurely, in many cases after less than 15,000 miles.

5.      On information and belief, Audi knew or should have known that the Class Vehicles and their braking systems are defective and not fit for their intended purpose of providing consumers with safe and reliable transportation. Nevertheless, Audi has actively concealed and failed to disclose this defect to Plaintiffs and the Class Members at the time of purchase or lease and thereafter.

---

[1] The Warranty lasts 4 years or 50,000 miles, whichever occurs first.

6.     Audi knew and concealed the Brake Defect that is contained in every Class Vehicle, along with the attendant safety concerns and associated repair costs, from Plaintiff and Class Members both at the time of sale and repair and thereafter.  Had Plaintiff and the Class Members known about these defects at the time of sale or lease, Plaintiff and the Class Members would not have purchased the Class Vehicles or would have paid less for them.

7.     As a result of Audi's practices, Plaintiff and the other members of the proposed Class, have suffered injury in fact, including economic damages, and have lost money or property.  Plaintiff brings a claim for breach of express warranty, breach of implied warranty, violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, statutory fraud, and unjust enrichment..

## PARTIES

### Plaintiff

8.     Plaintiff Sandra Speier-Roche is a Florida citizen who resides in Coconut Grove, Florida.

9.     On or about March 20, 2007, plaintiff leased a 2007 Audi Q7 sport-utility vehicle bearing Vehicle Identification Number WA1BY74L97D08532 from The Collection, an authorized Audi retailer in Coconut Grove, Florida.[2]  Plaintiff leased the vehicle primarily for her personal, family, or household purposes.

10.     On March 13, 2008, plaintiff brought her vehicle to The Collection as a result of her vehicle "making a squeal type noise when braking."  At the time, plaintiff's vehicle had only 7,673 miles on the vehicles odometer.  The Audi technician inspected the vehicle and found that the front pads and rotors were "below specs" and noted the following:

---

[2] At the conclusion of the lease term, plaintiff purchased the vehicle on March 16, 2010.

> WORN TEST DROVE VEHICLE AND DUPLICATED
> EXCESSIVE SQUEAL, INSPECTED AND FOUND GLAZING
> ON BRAKE PADS AFTER REMOVAL. I THEN SCUFFED
> SURFACE AND REINSTALLED, TEST DROVE VEHICLE
> AND SQUEAL STILL OCCURING. AS PER SHOP FORMAN
> REPLACED FRONT PADS AND ROTORS AND CLEANED
> AND LUBED MATEING SURFACES, REINSTALLED
> ABOVE AND TEST DROVE VEHICLE. LEFT FRONT
> ROTOR 33.3 MM INNER PAD 5.2MM OUTER 6.3MM RIGHT
> FRONT AT SAME MEASURMENTS

As a result, plaintiff's front brake rotors, pads and sensors were all replaced.  Plaintiff was not charged for these repairs.

11.     On March 23, 2009, plaintiff brought her vehicle back to The Collection for ordinary maintenance and to have her tires checked.  Her vehicle had 14,619 miles on the odometer at the time.  While plaintiff was at the dealership she requested that her brakes be inspected.  An Audi technician inspected her vehicle and determined that "brakes [were] within safety specs, front brakes at about 35 to 40 percent of material left and rear brakes at about 25 to 30 percent of material left, 3000 miles to 5000 miles left for service."

12.     On March 30, 2009, plaintiff brought her vehicle back to The Collection complaining of "noise from [her] rear brakes."  With only 14,724 miles on her vehicle's odometer -- approximately 100 miles since her last visit -- plaintiff was advised that she had to replace her rear brake pads.  Despite her vehicle still being covered under the Warranty, Audi refused to make the repairs free of charge, instead charging plaintiff over $200 to replace her brake pads.

13.     Then on February 22, 2010, plaintiff again brought her vehicle to the Collection complaining that "when braking at low speeds [she] hears loud brake noise."  At the time plaintiff's vehicle had 21,212 miles on the odometer.  The Audi technician who inspected plaintiff's vehicle determined that the front brake pads and rotors needed to be

replaced, despite having already been replaced 13,539 miles earlier.  Even though her vehicle was still covered under the Warranty, plaintiff was forced to pay hundreds of dollars for the repairs.

14.     On August 25, 2011, plaintiff brought her vehicle back to The Collection and advised that the "brake[s] seem to be on always, now brake lamp on at dash."  At the time plaintiff's vehicle had 31,542 miles on the odometer.  Plaintiff's vehicle was inspected by an Audi technician who discovered that both the front and rear brake pads were "below specs," and required replacement.   At the time of this replacement, the rear brake pads had been used for 16,818 miles, and the front brake pads used for 10,330 before needing to be replaced.  The Collection recognized that "brake pads [were] not working properly," and offered to cover 50% of the cost to replace the brake pads.  Despite this "one-time goodwill," plaintiff was still forced to pay $302 to repair her vehicle.

15.      On February 18, 2013, plaintiff again brought her vehicle to The Collection for service, including her brakes.  At the time, plaintiff's vehicle had 40,568 miles on the vehicle's odometer.  Upon inspection, the Audi technician found that the "front pads and rotors [were] below specs," and required replacement.  At the time of this replacement, plaintiff's front brake pads were used for 9,026 miles and the front brake rotors were used for 19,356 miles.  Plaintiff paid approximately $700 to replace the front brake pads and rotors at this visit.

16.     On August 20, 2013, plaintiff again brought her vehicle to The Collection for service, including her brakes.   At the time, plaintiff's vehicle had 43,680 miles on the vehicle's odometer.  Upon inspection, the Audi technician found that the "rear pads and rotors at minimum specification," and required replacement.  At the time of this replacement,

plaintiff's rear brake pads were used for 12,138 miles. The Audi dealer agreed to partially cover this repair under "AudiAG Goodwill" due to "multiple brake issues and replacements previously." Plaintiff paid $316 to replace the rear brake pads and rotors at this visit.

17.     Before plaintiff leased the subject Audi Q7, she consulted with Audi sales representatives, test drove vehicles and reviewed sales/marketing materials. However, at no time did the Audi dealer or any of the postings on the subject vehicles disclose to plaintiff that the Class Vehicles suffer from the Brake Defect alleged herein. Had Audi disclosed the true nature of the Brake Defect alleged herein, plaintiff would not have leased the subject vehicle or would have paid less for it.

**The Defendant**

18.     Volkswagen Group of America, Inc., doing business as Audi of America, Inc. ("Audi") is a corporation organized and in existence under the laws of the State of New Jersey with its headquarters located in Herndon, Virginia. Audi also maintains corporate offices in Woodcliff Lake and Englewood Cliffs, New Jersey. At all times relevant herein, Audi was engaged in the business of importing, marketing, distributing, warranting, servicing, repairing and selling automobiles and other motor vehicles and motor vehicle components in New Jersey and throughout the United States of America.

19.     Volkswagen AG, Berliner Ring 2, 38440 Wolfsburg, Federal Republic of Germany and Audi AG, Auto-Union-Str.2, D-85045, Ingolstadt, Deutschland, are automobile design, manufacturing, sale, leasing, distribution, and servicing corporations organized under the laws of Germany doing business in all 50 states in the United States. Volkswagen AG is the parent of defendant Volkswagen Group of America, Inc. d/b/a Audi of America, Inc. and Audi AG. These defendants design, manufacture, distribute, market, service, repair, sell and

lease vehicles, including the Class Vehicles, nationwide.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §§1332(d)(2) and (6) of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

21.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because Defendant Audi is a New Jersey corporation that maintains corporate offices in New Jersey, transacts business in this district, is subject to personal jurisdiction in this district, and therefore is deemed to be a citizen of this district.  Additionally, Audi has advertised in this district and has received substantial revenue and profits from their sales and/or leasing of Class Vehicles in this district; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

22.     This Court has personal jurisdiction over Audi.  Audi is a New Jersey corporation that maintains corporate offices in New Jersey.  As such, Defendant has conducted substantial business in this judicial district, and intentionally and purposefully placed Class Vehicles into the stream of commerce within the districts of New Jersey and throughout the United States.

## NEW JERSEY LAW SHOULD APPLY

23.     To the extent that the Court determines that it is appropriate to engage in a choice of law analysis for purposes of deciding any motion to dismiss that may be filed by

defendants, New Jersey's substantive laws should apply to the proposed nationwide Class, as defined herein, because Plaintiff properly brings this Complaint in this District.

24.     New Jersey's substantive laws may be constitutionally applied to the claims of Plaintiffs and the Class Members under the Due Process Clause, 14th Amendment, § 1, and the Full Faith and Credit Clause, Art. IV., § 1, of the U.S. Constitution.  New Jersey has significant contact, or significant aggregation of contacts, to the claims asserted by plaintiff and all Class Members, thereby creating state interests that ensure that the choice of New Jersey state law is not arbitrary or unfair.

25.     Specifically, Audi is a New Jersey corporation and maintains multiple corporate offices in New Jersey.  Defendant Audi is also registered with the New Jersey State Business Gateway Service.

26.     Audi owns property and conducts substantial business in New Jersey and, therefore, New Jersey has an interest in regulating Audi's conduct under its laws.  Audi's decision to organize itself under the laws of New Jersey, maintain corporate offices in New Jersey, and avail itself of New Jersey's laws renders the application of New Jersey law to the claims herein constitutionally permissible.

27.     A substantial number of Class Members also reside in New Jersey and purchased their vehicles in New Jersey.

28.     Upon information and belief, New Jersey is also the forum in which some of Audi's misconduct emanated.  This conduct similarly injured and affected Plaintiff and all Class Members residing in the United States.  For instance, on information and belief Audi's "Product Liaison Group" is located in New Jersey.  This group is responsible for, among other things, investigating vehicle defects, dealing with issues that might result in legal

action such as claims that the Warranty is being breached, and communicating with its parents companies in Germany.  As a result, New Jersey is where some of the conduct causing injury to the plaintiff and Class Members occurred and from where it emanated.

29.     The application of New Jersey's laws to the Nationwide Class is also appropriate under New Jersey's choice of law rules because New Jersey has significant contacts to the claims of the plaintiff and the proposed Nationwide Class, and New Jersey has a greater interest in applying its laws here than any other interested state.

## **TOLLING OF STATUTES OF LIMITATION**

30.     Any applicable statute(s) of limitations has been tolled by defendants' knowing and active concealment and denial of the facts alleged herein. Despite their due diligence, plaintiff and members of the class could not have reasonably discovered the true, defective nature of the Class Vehicles until shortly before this class action litigation was commenced.

31.     Defendants were and remain under a continuing duty to disclose to plaintiff and members of the class the true character, quality and nature of the Class Vehicles and their brake systems, that this defect is based on defects in materials and/or manufacturing, that it will require costly repairs, poses a safety concern, and diminishes the resale value of the Class Vehicles. As a result of the active concealment by defendants, any and all statutes of limitations otherwise applicable to the allegations herein have been tolled.

32.     Moreover, because the Brake Defect cannot be detected until the defect manifests itself, plaintiff and the Class were not reasonably able to discover the problem until long after purchasing or leasing the Class Vehicles, despite their exercise of due diligence.

33.     Plaintiff and the other Class Members had no realistic ability to discern that

the Brakes were defective until the defect manifested itself. In addition, despite their due diligence, plaintiff and the other Class Members could not reasonably have been expected to learn or discover that they were deceived and that material information concerning the Class Vehicles and their braking systems were concealed from them, until the Brake Defect had manifested itself. Therefore, the discovery rule is applicable to the claims asserted by Plaintiff and the other Class Members.

34. Any applicable statute of limitation has therefore been tolled by defendants' knowing, active concealment and denial of the facts alleged herein. Defendants are further estopped from relying on any statutes of limitation because of its concealment of the defective nature of the Class Vehicles and their brakes.

## FACTUAL ALLEGATIONS

35. For years, defendants have designed, manufactured, distributed, imported, warranted, marketed, advertised, serviced, sold, and leased the Class Vehicles. Upon information and belief, defendants have sold, directly or indirectly through dealers and other retail outlets, thousands of Class Vehicles in New Jersey and nationwide.

36. The Class Vehicles come equipped with an anti-lock braking system with vacuum power assist, which consists of braking components (rotors, calipers, master cylinder, and brake pads), an Electronic Brake-pressure Distribution system, electronic Brake Assist and an Electronic Stabilization Program (collectively, the Class Vehicles' "Braking System").

37. Audi provides owners and lessees of Class Vehicles with a New Vehicle Limited Warranty. The Warranty states that Audi will cover any repairs to correct a manufacturer's defect in material or workmanship for 4 years or 50,000 miles, whichever

occurs first.

38.     The defect in the Class Vehicles' Braking System causes the brake pads and rotors to wear out prematurely, and require replacement approximately every 15,000 miles or less.  Upon information and belief, in properly functioning braking systems, brake pads and rotors can last for 30,000 miles or more.

39.     Because the Brake Defect is caused by defects in material and/or workmanship, Audi is obligated to cover repairs to the Braking System during the Warranty period.  Audi, however, refuses to repair consumers' vehicles under the Warranty, refuses to replace the parts free of charge, and refuses to publically acknowledge that the Brake Defect exists.  Audi's refusal to honor the warranty harms the plaintiff and Class members by forcing them to incur out-of-pocket costs on covered repairs and by forcing them to spend excessive time replacing parts repeatedly damaged by the Brake Defect.

40.     Numerous consumer complaints concerning the Braking System in Class Vehicles have been lodged with the Audi as well as on various internet forums.  Upon information and belief Audi employees regularly monitor internet forums to assess what issues consumers are having with Audi vehicles and what problems may need to be addressed.  These complaints reflect the abnormally premature failure of the brake pads, the repeated, unexpected repair costs, and Audi's refusal to honor its warranty or to take responsibility for the Brake Defect.  The complaints also demonstrate Audi's awareness of the defect and how potentially dangerous the defective condition is (note that spelling and grammar mistakes remain as found in the original):

> **#185 of 489 New Brakes $$$? What did you pay? by vip9**
> **DEC 19, 2007 (12:06 PM)**
> At 15K service my S/A "suggested" that I should replace all 4
> wheel brakes at a cost of app. $1,000 less $70 savings for "still-

good" sensors. How does that stack up against the prices you had to pay? What was parts/labor ratio? I figure I can probably only save on labor if I go to a local shop and not to a dealer. Thanks.

**#241 of 489 Brake light? by vip9**
**APR 05, 2008 (11:18 AM)**
During a 15K visit around Christmas, my dealer pushed me hard to have the brakes replaced ($$$$). They said only 4 mm left on the pads. And, if I did it then, I would have saved about $100 by not having to replace the sensors.
I opted out at the time, but now, 3 + months and 5K miles later, I am worried that the brakes are all worn out and I somehow missed it.
Should there be a light on the dashboard when the brakes are worn out?
Thanks.

**#276 of 489 Brakes by mdhs**
**OCT 07, 2008 (7:32 PM)**
My Q7 Is JUST a year old and has 125000 miles on it. I was just told that I need new brakes for $773. . It seems a little soon. We do not do a lot of hill driving or anthing of note. Anyone else with this issue?

**#278 of 489 Re: Brakes [mdhs] by ody02tjk**
**OCT 08, 2008 (5:46 AM)**
I had to have the brakes on my 2007 Q7 3.6 done at 15,0000 miles (back in June), and that cost nearly $800. Now at 19,000 miles I am hearing the sensors again. I cannot believe that any car should need brakes this often. I am going to take to a brake place rather than the dealer to get a "better" assessment of the brakes. I really think that Audi should cover their brakes under the maintenance plan if the brakes fail so quickly.

**#285 of 489 Re: Follow up brake issue [cspillman] by ody02tjk**
**OCT 17, 2008 (5:06 AM)**
My brake noise became unbearable around 16K miles, and my dealer told me I needed new brakes (to the tune of over $800). I had the work done (reluctantly) and I did not hear any noises for about 1500 miles. Now at 19K miles, these are screeching horribly again. I have noticed that it is not as bad, although still quite audible, when the wheels have been cleaned. I think it is atrocious that any car should need brakes so frequently. My old Lexus LX went 60K miles before needing replacements. I was told that since I do about 1/2 my driving as stop and go, the

brakes are going to wear "more quickly". Personally, I think it is a design flaw, or poor pad supplier. What did your Audi dealer state the real problem was with the brakes?

**#292 of 489 Re: Brakes [mdhs] by epq7**
**OCT 21, 2008 (2:27 PM)**
I have leased my Q7 2 years ago, the first time we changed our breaks where at 12 thousand after a 6 month I was able to prove to the dealer that this is not normal and I got my $700 reimbersement no 13 thousand latter I know again need to change the breaks. This is obviously an issue with this car an unless Audi except this nothing will be done. everytime I spoke with Audi they send me back to the dealer, but I think the audi needs to hear more about this from when I spoke with them on this issue they said that unless they have a lot of cars that have the same issue nothing will be done to me it sounds like a major flow in the design of this car if you have to replace breaks, sensor and roters evrey 12-15 K this car will cost a fortune. I love this car, but I think the AUDI needs to setup to the plate and cover the breaks on all Q7 at this point I know for sure I will not lease another Q7. I think it's important for everyone that has an issue with break CALL AUDI and complaint. If we get enough buzz they might do something.
A proud owner of AUDI.

**#355 of 489 Re: Brakes [mdhs] by roadddog53**
**JAN 08, 2009 (6:21 PM)**
I just hit 14K miles on the car, and took it in for service last friday.
They quoted me $840 to replace the front brakes and rotors.
I said, "there's no way the rotors have worn out after 14K miles!" and they said that's the only way to get rid of the noise i've been getting.
I'd like to know what the first guy said to get reimbursed as well.

**#359 of 489 by grn95**
**FEB 22, 2009 (3:47 PM)**
I still cant seem to understand the break issues. Years ago I swore to never buy a GM car ever again as the brakes would always need replacing around 20k. Here is a $50k vehicle and I am going to have to replace the brakes at 15k and it will cost over $800... That is absolutely ridiculous. I have a Japanese made Pathfinder and I finally replaced the front pads only at 68k!! Rotors were fine, bake brakes are fine, and I couldnt have went longer on the front pads. Total cost $40 for me to replace the pads with Ceramic Pads. And back to some posts around page 15 or 16 of

this discussion, I see nothing Audi Maintenance Package is going to do aside from oil changes for $500. Made the mistake of ASSuming the AMP would take care of all maintenance (brakes, etc) for 3 years. Brakes are "maintenance" items. It should be called the $500 Audi Oil Change Package. All in all so far I love this vehicle, major complaint so far is the clear coat on the roof. It is somewhat rough not smooth like the rest of the vehicle. Talking with dealer and hope to bring it in soon. It has no visual impact thankfully and with the Panorama roof there isnt much of it anyway.

### #364 of 489 Beware Q7 Brakes will need to be replaced by rdaws
**MAR 26, 2009 (8:35 PM)**
Have a 2007 Q7 and have been going round and round with service and customer care about having to replace brake rotors at 22k miles! It is $1000 for the front and will be for the back. Alledgedly, Audi went with "high performance" (re: softer metal) rotors in 2007 to reduce brake squeal and as a result, the pads wear the rotors down and now they need to be replaced at the same time (pads and rotors). At any rate, anyone looking at a Q should budget that in to their cost when calculating the cost of a lease. Also, total care maintenance program is a joke! I'm really unhappy with the cost of ownership. Between tires/brakes, you will spend $2500-$3000+ in maintenance during your lease. Better off going Japanese or BMW (rotors/pads are covered in the 4 yr maintenance package with BMW)

### #365 of 489 Re: Beware Q7 Brakes will need to be replaced [rdaws] by mdhs
**MAR 27, 2009 (7:19 AM)**
We had to do our brakes at 14,000 ! It is a real problem that Audi needs to address.

### Re: Audi Q7 2009 [sganguly] by ody02tjk
**APR 24, 2009 (3:26 PM)**
I am 2 years in on my lease, and had to replace brakes at 16K miles. Plan on it as an expense every 15-17K miles, for at least $1000. Also plan on tires at 20K miles. Both the tires and brakes were a nasty surprise. At least for the tires I was able to get the replacements at TIRERACK.com. They had the same tires as the dealer at $135/tire, vs. a quoted $400 per tire (just for the tire) at the Audi dealer. They wanted $1850 total for 4 tires. It is a great driving and comfortable car, but the Q7 is very expensive to maintain. My old Lexus LX went 60K miles before needing either tires or brakes. I am back to Japanese after this experience.

If you have not taken delivery, I would cancel the purchase, and go back to a BMW, or switch to a Lexus, Acura, or Infiniti. They may not offer the maintenance plans, but you end up paying more with the Audi care items that are NOT covered, than you do on regular maintenance on the Japanese cars.

**#394 of 489 Brakes are NOT to Spec by kerrynj**
**SEP 01, 2009 (5:19 PM)**
I have 32,000 miles on my Q7. I have put two sets of brakes on this truck. My last time at the dealer the service guy let it slip that the brakes were NOT to spec. So they put brakes that can't truly support the weight of this truck. I noticed from day one that I always had brake dust on the rims. That was a sign and the squeaking. This is the fifth Audi that we have had, never have we had the problems with the others. I WILL NEVER BUY ANOTHER AUDI.

**#401 of 489 Re: Q7 Brake Wear [jayrider] by rdaws**
**OCT 04, 2009 (6:04 PM)**
Replying to: jayrider (Oct 04, 2009 7:02 am)
It isn't about the pads, my friends. It is the width of the rotors. These are evidently very thin and they're soft. The pads are actually creating grooves in the rotors that can over time can cause brake failure. Audi went with this design to eliminate the squeal that has plagued the audi line. Too bad they went with undersized wimpy rotors...

http://townhall.edmunds.com/direct/view/.f1f1b57

41.     Consumers do not expect to have to inspect or replace the brake pads and rotors after only 7,500 to 15,000 miles. The undisclosed defect in the Braking System poses an unreasonable safety risk to consumers.

42.     Defendants have long known that the Class vehicles have a defective Braking System. Defendants' have exclusive access to information about the Brake Defect through its dealerships, pre-release testing data, warranty data, customer complaint data, and replacement part sales data, among other sources of aggregate information about the problem. In contrast, the Braking System defect was not known or reasonably discoverable by plaintiffs and Class members prior to purchase and without experiencing the defect first

hand and exposing themselves to an unreasonable safety risk.

43.     Defendants have actively concealed the Brake Defect from consumers.  Even when vehicle owners specifically ask whether their vehicle suffers from a known problem, defendants' policy is to deny that there is a known problem, continue concealing the Brake Defect, and to assert that replacing brake pads every 7,500 to 15,000 miles is normal or that it is the consumers' aggressive driving behavior that is causing the problem.  Defendants knew that potential car buyers and lessees would deem the defect in the Braking System to be material such that reasonable consumers who knew of the defect either would have paid less for the Class Vehicles or would not have purchased or leased a Class Vehicle at all.

44.     Defendants owe a duty to disclose the Brake Defect and the associated repair costs to Class Vehicles owners, among other reasons, because the defect poses an unreasonable safety hazard; because defendants have exclusive knowledge or access to material facts about the Class Vehicles and their Braking System that are not known or reasonably discoverable by Plaintiffs and Class Members; and because defendants have actively concealed the Brake Defect from its customers.

45.     As a result of defendants' practices, Plaintiffs and Class members purchased vehicles they otherwise would not have purchased, paid more for those vehicles than they would have paid, were subjected to an unreasonable risk to their safety, and unnecessarily paid, and will continue to pay, repair costs as a result of the Brake Defect.

## CLASS ACTION ALLEGATIONS

46.     Plaintiff brings this lawsuit as a class action on behalf of herself and all others similarly situated as members of the proposed Plaintiff Class pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) and/or (b)(2).  This action satisfies the numerosity,

commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

47.     The Class and Sub-Class are defined as:

Nationwide Class:     All current and former owners and lessees of any 2007 to present Audi Q7 vehicles.

Florida Sub-Class: All Members of the Nationwide Class who purchased or leased the subject vehicles in the state of Florida.

48.     Excluded from the Class and Sub-Class are: (1) Defendant, any entity or division in which Defendant has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) those persons who have suffered personal injuries as a result of the facts alleged herein.  Plaintiff reserves the right to amend the Class and Sub-Class definitions if discovery and further investigation reveal that the Class and Sub-Class should be expanded or otherwise modified.

49.     Numerosity:  Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable.  The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.  The Members of the Class are readily identifiable from information and records in defendants' possession, custody, or control, as well as from records kept by the Department of Motor Vehicles.

50.     Typicality:     The claims of the representative Plaintiff are typical of the claims of the Class in that the representative Plaintiff, like all Class Members, purchased and leased a Class Vehicle in which the Brake System is defective.  The representative Plaintiff, like all Class Members, has been damaged by defendants' misconduct in that she has incurred the cost of replacing the brake pads and brake rotors which were prematurely worn.

Furthermore, the factual bases of defendants' misconduct are common to all Class Members and represent a common thread of fraudulent, deliberate, and negligent misconduct resulting in injury to all Class Members.

51.   <u>Commonality</u>: There are numerous questions of law and fact common to Plaintiff and the Class which predominate over any questions affecting only individual Class Members.  These common legal and factual issues include the following:

      a.      Whether the Class Vehicles and their Braking Systems are defectively designed or manufactured;

      b.      whether the fact that the Class Vehicles suffer from the Brake Defect would be considered material by a reasonable consumer;

      c.      whether as a result of defendants' concealment or failure to disclose material facts, plaintiff and Class Members acted to their detriment by purchasing the Class Vehicles;

      d.      Whether defendants were aware of the Brake Defect;

      e.      whether the Brake Defect constitutes an unreasonable safety risk;

      f.      whether defendants have a duty to disclose the defective nature of the Class Vehicles and their Brake Defect to plaintiff and the other Class Members;

      g.      whether plaintiff and the other Class Members are entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction;

      h.      whether Defendant violated the consumer protection statutes of New Jersey or Florida when it sold to consumer Class Vehicles that suffered from Brake Defect.

52.   <u>Adequate Representation</u>:   Plaintiff will fairly and adequately protect the interests of the members of the Class.  Plaintiff has retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiff intends to prosecute this action vigorously

53.   <u>Predominance and Superiority</u>:  Plaintiff and the other Class Members have all

suffered and will continue to suffer harm and damages as a result of Defendants' unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendants' misconduct.  Absent a class action, Class Members will continue to incur damages, and Defendants' misconduct will continue without remedy.  Class treatment of common questions of law and fact would also be superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

## VIOLATIONS ALLEGED

### COUNT I
### BREACH OF EXPRESS WARRANTY
**(On Behalf of the Nationwide Class or,
alternatively, the Florida Sub-Class)**

54.    Plaintiff and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

55.    This cause of action is brought against Defendant Volkswagen Group of America, Inc., doing business as Audi of America, Inc. only.

56.    Audi expressly warranted that the Class Vehicles were of high quality and, at a minimum, would actually work properly.  Audi also expressly warranted that it would repair and/or replace defects in material and/or workmanship free of charge that occurred during the Warranty period.

57.    Audi breached this warranty by selling to Plaintiff and Class members the

Class Vehicles with known brake system problems, which are not of high quality, and which fail prematurely and/or fail to function properly.

58.     Audi further breached this warranty by failing to repair and/or replace Plaintiff's and other Class Members' defective brake systems when they failed during the Warranty period.

59.     Plaintiff purchased a 2007 Audi Q7 that came with the standard Warranty. On at least two occasions while plaintiff's vehicle was still covered by the Warranty, Plaintiff's brakes failed prematurely as a result of the Brake Defect. Pursuant to the terms of the Warranty, Plaintiff brought her vehicle to an Audi authorized service center and requested that such repairs be completed under the Warranty. Despite these requests, Audi denied such warranty claims on the basis that brakes are "wear items" and not covered by the Warranty.

60.     Audi has known of the Brake Defect at least as early as 2007 and continues to have knowledge of the defect(s) and breaches of its express warranty, yet has intentionally failed to notify Plaintiff and members of the Plaintiff Class.

61.     This intended failure to disclose known defect(s) is malicious, and was carried out with willful and wanton disregard for the rights and economic interests of Plaintiff and class members.

62.     As a result of the Audi's actions, Plaintiff and Class members have suffered economic damages including but not limited to costly repairs, loss of vehicle use, substantial loss in value and resale value of the vehicles, and other related damage.

63.     Defendant's breach of this warranty caused damages to Plaintiff and class members.

64.     Defendant's attempt to disclaim or limit these express warranties vis-à-vis

consumers is unconscionable and unenforceable under the circumstances here. Specifically, Defendant's warranty limitation is unenforceable because they knowingly sold a defective product without informing consumers about the defect.

65.    The time limits contained in Defendant's warranty period were also unconscionable and inadequate to protect Plaintiff and members of the Class. Among other things, Plaintiff and Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendant. A gross disparity in bargaining power existed between Audi and class members, and Audi knew or should have known that the Class Vehicles were defective at the time of sale and would fail well before their useful lives.

66.    Plaintiff and class members have complied with all obligations under the Warranty, or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

**COUNT II**
**BREACH OF WRITTEN WARRANTY UNDER THE MAGNUSON MOSS**
**WARRANTY ACT, 15 U.S.C. § 2301 *ET SEQ.***
**(On Behalf of the Nationwide Class or,**
**alternatively, the Florida Sub-Class)**

67.    Plaintiff and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

68.    This cause of action is brought against Defendant Volkswagen Group of America, Inc., doing business as Audi of America, Inc. only.

69.    Plaintiff and the other Class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

70.    Audi is a "supplier" and "warrantor" within the meaning of sections 2301(4)-

(5).

71.     The Class Vehicles are "consumer products" within the meaning of section 2301(1).

72.     Audi's express warranty is a "written warranty" within the meaning of section 2301(6).

73.     Audi breached the express warranty by:

   a.     Extending a 4 year/50,000 miles New Vehicle Limited Warranty with the purchase or lease of the Class Vehicles, thereby warranting to repair or replace any part defective in material or workmanship at no cost to the owner or lessee;

   b.     Selling and leasing Class Vehicles with Braking Systems that were defective in material and workmanship, requiring repair or replacement within the warranty period; and

   c.     Refusing to honor the express warranty by repairing or replacing, free of charge, the Braking System or any of its component parts and instead charging for repair and replacement parts.

74.     Audi's breach of the express warranty has deprived the Plaintiffs and the other class members of the benefit of their bargain.

75.     The amount in controversy of the Plaintiff's individual claims meet or exceeds the sum or value of $25,000. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

76.     Audi has been afforded a reasonable opportunity to cure its breach of written warranty, including when Plaintiff and other class members brought their vehicles in for diagnoses and repair of their Braking Systems.

77.     As a direct and proximate cause of Audi's breach of written warranty, Plaintiff and class members sustained damages and other losses in an amount to be determined at trial.

Audi's conduct damaged Plaintiff and class members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, rescission, and/or other relief as appropriate.

**COUNT III**
**BREACH OF THE IMPLIED**
**WARRANTY OF MERCHANTABILITY**
**(On Behalf of the Nationwide Class or,**
**alternatively, the Florida Sub-Class)**

78.     Plaintiff and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

79.     Defendants are a "merchants" as defined under the Uniform Commercial Code ("UCC").

80.     The Class Vehicles are "goods" as defined under the UCC.

81.     Defendants impliedly warranted that the Class Vehicles were of a merchantable quality.

82.     Defendants breached the implied warranty of merchantability, as the Class Vehicles were not of a merchantable quality due to the defective brake system, and the associated problems caused by this defect.

83.     As a direct and proximate result of the breach of said warranties, plaintiff and class members were injured, and are entitled to damages.

84.     Defendants' attempt to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here.  Specifically, defendants' warranty limitation is unenforceable because they knowingly sold a defective product without informing consumers about the defect.

85.     The time limits contained in defendants' warranty period were also unconscionable and inadequate to protect plaintiff and members of the Class.  Among other

things, plaintiff and members of the Class had no meaningful choice in determining these time limitations, the terms of which unreasonably favored defendants. A gross disparity in bargaining power existed between defendants and class members, and defendants knew or should have known that the Class Vehicles were defective at the time of sale and that the brake system would fail well before their useful lives.

86.     Plaintiff and Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of defendants' conduct described herein.

**COUNT IV**
**VIOLATION OF THE NEW JERSEY**
**CONSUMER FRAUD ACT**
**(On Behalf of the Nationwide Class)**

87.     Plaintiff and the Nationwide Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

88.     The New Jersey Consumer Fraud Act ("NJCFA") protects consumers against "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise . . . ." N.J.S.A. 56:8-2.

89.     Plaintiff and class members are consumers who purchased and/or leased Class Vehicles for personal, family, or household use.

90.     Defendants engaged in unlawful conduct, made affirmative misrepresentations and material omissions, or otherwise violated the NJCFA. Specifically, defendants were aware that the Class Vehicles suffered from a common defect resulting in failure of the brake systems in the Class Vehicles, but purposefully failed to disclose this to plaintiff and class

members during the purchase of the vehicle or thereafter.  Defendants failed to disclose the Defect with the knowledge that many Class Members may not discover the Defect until after the expiration of their warranties.

91.   Defendants also engaged in unlawful conduct in violation of the NJCFA by making knowing and intentional omissions.  Defendants purposefully and knowingly failed to disclose the Defect in the Class Vehicles in order to secure the sale of these vehicles at a premium price and also to mislead owners during the limited warranty period to avoid having to perform their contractual duties under the warranty.

92.   Defendants did not fully and truthfully disclose to its customers the true nature of the inherent defect in the Brake System, which was not readily discoverable until years later, sometimes after the warranty has expired.

93.   Defendants intended that plaintiff and all class members rely on the acts of concealment and omissions, so that they would lease and/or purchase the Class Vehicles and not have the defects remedied under warranty.

94.   Additionally, when plaintiff and class members presented their vehicles for brake repairs during the Warranty, defendants' agents and representatives falsely alleged that the brake failure was not the result of a defect and thereby not covered under warranty. Defendants' agents and representatives also improperly attempted to shift the blame on to plaintiff and class members by alleging that the brake failure was somehow caused by driving style and/or the premature failure was "normal."

95.   As a result of defendants' conduct, plaintiff and class members have suffered an ascertainable loss.  In addition to direct monetary losses to repair the Defect, which over time can be thousands of dollars, plaintiff and class members have also suffered an

ascertainable loss by receiving less than what was promised.

96.     A causal relationship exists between defendants' unlawful conduct and the ascertainable losses suffered by plaintiff and the class members.  Had the Defect in the Class Vehicles been disclosed, consumers would not have purchased them, would have paid less for the Class Vehicles had they decided to purchase them, or would have presented their vehicles for repair of the Defect under warranty.

**COUNT V**
**VIOLATION OF THE FLORIDA**
**DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**
**(On Behalf of the Florida Sub-Class)**

97.     Plaintiff and the Florida Sub-Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

98.     The purpose of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") is "to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." FLA. STAT. § 501.202 (2).

99.     Defendants have engaged in unfair competition and unfair, unlawful or fraudulent business practices by the practices described above, and by knowingly and intentionally concealing from plaintiff and class members the fact that the Class Vehicles suffer from the Brake Defect (and the costs, risks, and diminished value of the vehicles as a result of this problem).  Defendants should have disclosed this information because they were in a superior position to know the true facts related to this defect, and plaintiffs and class members could not reasonably be expected to learn or discover the true facts related to this defect.

100.    These unfair methods of competition and unfair and deceptive acts have

caused injuries to plaintiffs and members of the Class.

**COUNT VI**
**COMMON LAW FRAUD**
**(On Behalf of the Nationwide Class or,**
**alternatively, the Florida Sub-Class)**

101.   Plaintiff and the Classes incorporate by reference each proceeding and succeeding paragraph as though fully set forth at length herein.

102.   Defendants made material misrepresentations and omissions concerning a presently existing or past fact.  For example, defendants did not fully and truthfully disclose to their customers the true nature of the Defect in the Class Vehicles, which was not readily discoverable until years later, sometimes after the warranty has expired.  As a result, plaintiff and the other class members were fraudulently induced to lease and/or purchase the Class Vehicles with the said defects and all of the resultant problems, and also not present their vehicles to an authorized repair facility during the warranty period to have the defect remedied at no cost.

103.   These omissions and statements were made by defendants with knowledge of their falsity, and with the intent that plaintiff and class members rely on them.

104.   Plaintiff and class members reasonably relied on these statements and omissions, and suffered damages as a result.

**COUNT VII**
**BREACH OF THE DUTY OF GOOD FAITH**
**AND FAIR DEALING**
**(On Behalf of the Nationwide Class or,**
**alternatively, the Florida Sub-Class)**

105.   Plaintiff and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

106.   Every contract contains an implied covenant of good faith and fair dealing.

The implied covenant of good faith and fair dealing is an independent duty and may be breached even if there is no breach of a contract's express terms.

107.    Defendants breached the covenant of good faith and fair dealing by, *inter alia*, failing to notify plaintiff and class members of the Defect in the Class Vehicles, misrepresenting the cause of the Brake Defect when the Class Vehicles presented to authorized dealerships for repairs, and failing to fully and properly repair this defect.

108.    Defendants acted in bad faith and/or with a malicious motive to deny plaintiff and Class Members some benefit of the bargain originally intended by the parties, thereby causing them injuries in an amount to be determined at trial.

### COUNT VIII
### UNJUST ENRICHMENT
### (On Behalf of the Nationwide Class or,
### alternatively, the Florida Sub-Class)

109.    Plaintiff and the Nationwide Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

110.    As a direct and proximate result of defendants'' failure to disclose known defects and material misrepresentations regarding known defects, and the scope of the Warranty coverage in the Class Vehicles, defendants have profited through the sale and lease of said vehicles.

111.    Additionally, as a direct and proximate result of defendants' failure to disclose known defects and material misrepresentations regarding known defects in the Class Vehicles, plaintiff and class members have incurred substantial costs to repair the defects, which requires the replacement of the defective parts with replacement parts also sold by defendants.  As a result of having to prematurely purchase these replacement parts as a result the Brake Defect, plaintiff and class members have conferred an unjust substantial benefit

upon defendants.

112.    Moreover, as a direct and proximate result of defendants' failure to disclose known defects and material misrepresentations regarding known defects in the Class Vehicles, defendants have profited to the extent that plaintiffs and class members purchased and leased defendants' vehicles, purchased certified parts directly from the defendants to repair the defects, and had to pay for repairs out of their own pocket that should have been covered under warranty.

113.    Defendants have therefore been unjustly enriched due to the known defects in the Class Vehicles through the use of funds that earned interest or otherwise added to defendants' profits when said money should have remained with plaintiff and Class Members.

114.    As a result of the defendants' unjust enrichment, plaintiff and class members have suffered damages.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff, individually and on behalf of members of the Class, respectfully requests that this Court:

a.    enter an order certifying the proposed Class and  Sub-Class, designating plaintiff as named representative of the Class, and designating the undersigned as Class Counsel;

b.    declare that defendants are financially responsible for notifying all Class Members about the Brake Defect;

c.    enter an order enjoining defendants from further deceptive distribution, sales, and lease practices with respect to Class Vehicles, and to remove and replace plaintiff and Class Members' brake systems with a suitable alternative product;

d.    award to plaintiff and the Class for compensatory, exemplary, statutory damages, treble and punitive damages, including interest, in an amount

to be proven at trial;

e.    award any and all remedies provided pursuant to the New Jersey Consumer Fraud Act and Florida Deceptive and Unfair Trade Practices Act;

f.    declare that defendants must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale or lease of the Class Vehicles, the repairs made to Class Vehicles and the sale of replacement parts, or make full restitution to plaintiff and class members;

g.    award of attorneys' fees and costs, as allowed by law;

h.    award of pre-judgment and post-judgment interest, as provided by law;

i.    grant leave to amend the Complaint to conform to the evidence produced during discovery and at trial; and

j.    Such other relief as may be appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims and issues so triable.

Dated:  September 30, 2013

By:   _____
Matthew Mendelsohn
David A. Mazie
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
Telephone:  (973) 228-9898
mmendelsohn@mskf.net
dmazie@mskf.net

Richard Norman, Esq. (*pro hac vice* forthcoming)
R. Martin Weber, Jr., Esq. (*pro hac vice* forthcoming)
**CROWLEY NORMAN, LLP**
3 Riverway, Suite 1775
Houston, Texas 77056
Telephone:  (713) 427-8715
rnorman@crowleynorman.com
mweber@crowleynorman.com

## LOCAL CIVIL RULE 11.2 CERTIFICATION

I hereby further certify that to the best of my knowledge, the matter in controversy is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

MAZIE SLATER KATZ & FREEMAN, LLC
Attorneys for Plaintiffs

_____
MATTHEW R. MENDELSOHN

Dated:  September 30, 2013